# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CHARLES E. WRIGHT and
DIANE R. WRIGHT

Plaintiff(s),

vs.

Case No: 8:14-cv-2298-T-33TGW

SELECT PORTFOLIO SERVICING, INC.; THE BANK OF NEW YORK MELLON f/k/a The Bank of New York, as Successor-in-Interest to JPMorgan Chase Bank, N.A. as Trustee for Bear Stearns Asset Backed Securities, Bear Stearns Alta-A Trust, Mortgage Pass Through Certificates Series 2006-2; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

Defendant(s).
_____

## **PLAINTIFFS' RESPONSE TO MOTION TO DISMISS**

Plaintiff(s), CHARLES E. WRIGHT and DIANE WRIGHT, (hereafter "Plaintiffs" or "Wrights") by and through their undersigned attorney, and files this response to Defendants' [SELECT PORTFOLIO SERVICING, INC.; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YOR, AS SUCCESSOR-IN-INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITITES, BEAR STEARNS ALTA-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-2; and MORTGAGE ELECTRONIC SYSTEMS, INC.] Motion to Dismiss and hereby state in support as follows:

**IN RESPONSE TO MOTION TO DISMISS CONCERNING
BANK OF NEW YORK MELLON**

**STATUTE OF LIMITATIONS ARGUMENT
FDCPA Claims: Count I, II & III**

1.   Defendant, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YOR, AS SUCCESSOR-IN-INTEREST TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR BEAR STEARNS ASSET BACKED SECURITITES, BEAR STEARNS ALTA-A TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-2, hereinafter referred to as "BONY" claims that Count(s) I, II & III are barred by the one year statute of limitations pursuant to 15 U.S.C. § 1692(k).

2.   However as specifically plead all three counts address the Amended Complaint of the State court case no.: 2013-CA-003077. Said Amended Complaint was filed on **April 24th, 2014**.

3.   The Amended Complaint that addresses the FDCPA claims against BONY in Count(s) I, II & III in this matter, was filed on **October 8th, 2014**, See generally ECF No. 12, i.e. well within one year's time.

4.   Additionally the amended foreclosure complaint within the State court case at issue was verified by Co-Defendant Select Portfolio Servicing, Inc. hereinafter "SPS" as Defendant BONY's agent and 'Attorney in Fact' on **April 18th, 2014**. **See Document 12-5 filed on 10/08/14 Page 9 of 35 Page ID 446** in this matter.

5.   The verified complaint filed on April 24th, 2014 constitutes a communication as defined in the FDCPA specifically, 15 U.S.C. § 1692(a)(2) defines the term <u>communication</u> as: "the conveying of information regarding a debt directly or indirectly to any person through any medium."

6. *"Filing a complaint is the debt collector's last opportunity to comply with the Act, and the filing date is easily ascertainable."* Quoting Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997).

7. Defendant, BONY would have this court believe that its' Amended Complaint (in the state court case) is not the equivalent of a new and separate pleading to the original complaint in order to fit the square peg into the round hole argument that the Amended Complaint is an "ongoing prosecution of a collection suit".

8. However the fact that under Florida Law a separate verification of the allegations made within a complaint, even an 'Amended Complaint' signifies that the Amended Complaint is a new and separate pleading to which the Defendant(s) in the state case, i.e. the Plaintiff(s) in this matter, would have to address separately without relating back to any response they may have given to the initial State court Complaint.

9. For this reason the argument made by Defendant, BONY pertaining to the statute of limitations on the FDCPA claims, in Counts I, II & III, simply fails.

## FDCPA: IS BONY A DEBT COLLECTOR?
## COUNTS I, II & III

10. By its' own argument, Defendant BONY admits that it is a debt collector. To wit, *"an owner of a debt by means of assignment can be considered a "debt collector", even where he is collecting on his own behalf, if the subject loan was acquired after the*

*date of default."* Quoting, <u>Bridge v. Ocwen Fed'l Bank FSB</u>, 681 F. 3d 355 (Ohio 2012).

11.  The Amended Complaint in the State foreclosure case attaches the same notice of acceleration i.e. 'date of default' as the original complaint in that same action. See [ECF No. 12-1 pages 359 thru 361] in comparison to [ECF 12-6 pages 473 thru 476].

12.  This notice of acceleration i.e. notice of default by Defendant, BONY is dated **August 5th, 2009**.

13.  The assignment at issue from Co-Defendant, MERS to Defendant, BONY was effectuated on **April 18th, 2013**, i.e. BONY became the alleged owner of the mortgage loan 'after' the date of default, considerably qualifying Defendant, BONY as a "debt collector".

14. Accordingly evidence has been submitted in the form of documents, within the four corners of the complaint [the assignment from MERS to BONY] and [a copy of the Amended Complaint in the State foreclosure matter attaching the notice of acceleration] confirming that Defendant, BONY was not the owner/ holder of the mortgage loan before the date of default/ acceleration.

### FLORIDA'S LITIGATION PRIVILEGE: COUNT IV AND COUNT XII
### FCCPA CLAIMS against BONY

15. In Florida, absolute privilege, also known as "litigation privilege", is premised upon the desire to provide "legal immunity for actions that occur in judicial proceedings" and to avoid the chilling effect that would result from potential exposure to subsequent lawsuits for statements a litigant makes while seeking redress for their injuries. Echevarria, McCalla Raymer, Barrett & Frappier v. Cole, 950 So.2d 380, 383 (Fla. 2007).

However, absolute privilege is somewhat limited such that not all statements made during the judicial process should be subject to an absolute privilege. Delmonico v. Traynor, 116 So.3d 1205 (Fla. 2013), citing Fridovich v. Fridovich, 598 So.2d 65 (Fla. 1992). In determining the applicability of an absolute privilege defense, the court must weigh the public interest in allowing litigation participants to freely pursue their causes against the rights of the individuals. Id. at 1217 (Fla. 2013). Absolute privilege is not a bright line bar to actions based upon a statement made in the course of prior litigation. The court must also consider the safeguards in place to provide "real and immediate checks to abusive and overzealous practices", i.e. "how far removed those practices were from protections of the formalized judicial process" that would protect the individual from the occurrence and consequences of such practices. Id. Thus, the application of the absolute privilege is a fact-specific moving target. The more tenuous the safeguards available to protect against untruths, the less relevant is the use of absolute privilege as a mechanism to discover the truth, and the more likely potential damage to the aggrieved party will result. "This shift creates an unacceptable imbalance among these competing interests, heightening concerns for abuse." Delmonico, at 1218. Where the absolute privilege does not address the underlying concerns that gave rise to the privilege and the **balance weighs more heavily in favor of protecting the rights of the aggrieved**, the court may find no privilege exists. *Id*. In this matter as specifically addressed in COUNTS IV and XII whereby Defendant, BONY assets the existence of the legal right (in its' initial pleadings/ suit in the State foreclosure case) to file suit when in fact it had no such right is a violation of the FCCPA. Additionally Defendant, BONY by filing a complaint once more when it has no legal or legitimate claim at the time to enforce the debt is also a

violation of the FCCPA. Should this court find that the litigation privilege does apply then Plaintiff(s) request leave to amend the complaint to plead an abuse of process claim instead.

## RICO CLAIMS COUNTS IX AND X
## AGAINST BANK OF NEW YORK MELLON AND MERS

16. Plaintiff's Amended Complaint sufficiently demonstrates the four elements required in pleading a RICO claim under § 1962(c).

17. Specifically paragraph(s) 33 of ECF 12 specifically states the conduct, of an enterprise by and between the conspiracy of both Defendant(s): MERS and BONY in executing an assignment "after" filing suit in an attempt to gain standing.

18. Accordingly the Plaintiff(s) have alleged sufficient facts to confirm an "association in fact" by and between Defendant(s) MERS and BONY as a group of persons associated together for a common purpose of engaging in a course of conduct. See *United States v. Turkette,* 452 U.S. 576, 583 (1981).

19. The relationship/ association in fact by and between Defendant(s) MERS and BONY exists separate and apart from the "pattern or racketeering" alleged in the complaint, as they are parties that frequently work together.

20. Accordingly the enterprise by and between Defendant(s) MERS and BONY have a purpose, relationships among those associated with the enterprise and longevity sufficient to permit these associates to pursue the enterprises's purpose. See *Boyle v. United States,* 556 U.S. 938, 946 (2009)

21. Plaintiff(s) have adequately alleged the existence of an enterprise that satisfies the basic criteria. They've alleged that the Defendant(s) BONY and MERS conspired to

draft and execute a false assignment and to use the assignment in foreclosure proceedings to seize their property.

22. Plaintiff(s) have alleged that the defendants used the mails and wires in furtherance of this scheme, and have alleged that the same defendant(s) have engaged in similar malfeasance in other foreclosure proceedings, all with the aim of obtaining title to several properties that are not rightfully theirs.

23. The alleged association-in-fact enterprise thus had a purpose and sufficient longevity, and its members had lasting relationships with one another.

24. Plaintiffs have sufficiently plead a pattern of racketeering activity by and between Defendant(s) BONY in Exhibit X of ECF 12, the Amended Complaint demonstrating another separate and distinct instant when BONY conspired to obtain an assignment to gain standing "after" suit was filed.

25. Plaintiffs have plead the requisite injury, i.e. the attorneys' fees incurred by Plaintiff(s) in defense of their foreclosure action and that the damages/ injury incurred by Plaintiffs came about by reason of the RICO violation.

## HEIGHTENED SCRUTINY OF RULE 9(b) MET

26. Rule 9(b) states as follows

> *"Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."*

27. The emphasis on the fraud committed by both MERS and BONY in this matter is not soley on the validity of the assignment, but also on the chronological execution of same.

28. Defendant(s) BONY and MERS conspired to obtain standing "after" a suit was filed in State court, a suit that contained allegations that BONY was already owner/ holder of the subject mortgage loan.

29. Although Defendant(s) may claim that the assignment was publicly recorded, thereby placing Plaintiff(s) on notice of same. The fact that the document was publicly recorded did not make the State court of Florida in the foreclosure matter or Plaintiff(s) in this matter aware that an assignment was executed "after" suit was filed by Defendant, BONY, i.e. concealment by silence in the court pleadings associated to the initial foreclosure complaint.

30. Hence the scienter of both BONY and MERS is established in the Amended Complaint in demonstrating the acts related to obtaining an assignment to gain standing when both Defendant(s) were aware that a suit/ litigation had already commenced and that BONY in essence lacked standing to file same. Should this court find that the RICO elements have not been met then Plaintiff(s) request leave to amend the complaint to properly delineate same.

## TILA CLAIM COUNT XI
## BANK OF NEW YORK MELLON

31. As previously stated although the assignment was recorded, Plaintiff(s) were not made aware of same by virtue of direct communication by the assignee / BONY as required by TILA.

32. The concealment of said assignment from the Plaintiff(s) was done to avoid the obvious argument that BONY lacked standing to file the State foreclosure action on February of 2013.

33. As stated in ECF 12 paragraph 100, Defendant, BONY deliberately concealed the existence of the assignment in furtherance of its scheme to gain standing in the State court Action.

34. Plaintiffs also argues that the Defendant, BONY alternatively opened itself up to liability or extended the statute of limitations on the TILA argument by filing an Amended Complaint in the State action on April 24th, 2014, which makes the claim under TILA as timely filed in this suit, as it is well within a year's time.

## CLAIMS AGAINST SELECT PORTFOLIO SERVICING, INC.
## COUNTS V, VI, VII and VIII

35. On March 25, 2013, Plaintiff's foreclosure defense counsel, Mark Stopa, filed and served a notice of appearance. (Exhibit D to Amended Complaint)

36. On July 25, 2013, Select Portfolio Servicing, Inc. became the loan servicer of the subject mortgage loan. (Amended Complaint, para. 39)

37. On August 12, 2013, the servicer notified the Plaintiff that BNYTRUST owns the mortgage loan. (Amended Complaint, para. 40; also see Exhibit I to Amended Complaint)

38. On August 15, 2014, SPS sent a periodic statement to the Plaintiffs. (Amended Complaint, para. 41; also see Exhibit J to Amended Complaint) This periodic statement which was sent after acceleration and during the pendency of the foreclosure action shows a late charge of $2,699.30 "New This Period" and lists a late payment amount. (Exhibit J) That late charge is a misrepresentation of the amount that is legally due because an attempt to collect a post-acceleration late charge is illegal under Florida

law. See *Fowler v. First Fed. Sav. & Loan Ass'n*, 643 So.2d 30 , 33 (Fla. 1st DCA 1994), (Concluding that the mortgagee "[was] only entitled to late charges that accrued up until the day the note was accelerated."

39. On August 22, 2014, the Plaintiff's sent an information request demand to SPS, specifically requesting a complete payment history with a breakdown of the amounts claimed to be in arrears or delinquent and all charges to escrow. (Amended Complaint, para. 42; also see Exhibit K to Amended Complaint)

40.  On May 14, 2014, SPS sent a periodic statement to the Plaintiffs.  This document was sent after acceleration and after the dismissal of the foreclosure states and it too alleges illegal late charges incurred after acceleration as it states "If payment is received after 06/16/2014, $161.66 late fee will be assessed." (Exhibit T)

41. On May 29, 2014, Plaintiff's illegal debt collection counsel, George Gingo, sent a letter to Select Portfolio Servicing, Inc. advising he represents the Plaintiffs and demanding validation of the debt with an information request for the account history and the basis for all charges to the account.  (Amended Complaint, para. 54; also see Exhibit Q to Amended Complaint)

42. SPS never responded to the information requests with the breakdown of the payment history.  Instead, on June 13, 2014 and on July 14, 2014, it sent two more dunning letters to the Plaintiffs. (Amended Complaint, para. 55 and 56; (Exhibits R & S to Amended Complaint)  Both of these dunning letters failed to provide a sum due for reinstatement but only included the entire sum due under the accelerated loan which included the misleading statement that late charges were accruing (in violation of *Fowler)*.

43. Congress passed the Dod-Frank Wall Street and Consumer Protection Act of

2011 ("Dodd-Frank") because the home mortgage servicing industry led to the largest financial loss in U.S. history. Dodd-Frank was designed to protect consumers who have federally related mortgage loans, and it does so by amending 15 U.S.C. 1601, et. seq. (The Truth in Lending Act, or "TILA"), 12 U.S.C. 2602, et. seq. (The Real Estate Settlement Procedures Act, or "RESPA") and by the creation of a new federal agency, the Consumer Financial Protection Bureau ("CFPB"). Some new substantive changes to RESPA and TILA add new requirements for loan servicers to provide accurate information to borrowers, the failure of which can result in a private right of action for actual damages, statutory damages and attorneys fees.

44. The Qualified Written Request ("QWR") provision of RESPA was used as a framework for these new requirements. The requirements for a QWR have been relaxed under Dodd-Frank and a QWR that asserts an error or seeks information is to be deemed a "Notice of Error" or "Request for Information" under Dodd-Frank. Nothing in Dodd-Frank grants a right or privilege to loan servicers in relation to borrowers.

45. The Defendant argues that its periodic monthly statements sent directly to the borrower is not a violation of the FDCPA because the Consumer Financial Protection Bureau (CFPB) issued an advisory opinion that stated:

> The CFPB concludes that the FDCPA "cease communication" option ***does not generally*** make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions of Regulation X . . . 1026.41 (periodic statement)). For the reasons discussed below, the CFPB concludes that a servicer that is considered a debt collector under the FDCPA with respect to a borrower that provides disclosures to and communicates with the borrower pursuant to the provisions listed above, notwithstanding a "cease communication" instruction sent by the borrower, is not liable under the FDCPA.

(emphasis added) (CFPB Bulletin 2013-12 (Oct. 15, 2013))

46.     12 C.F.R. 1026.41 states in part: "(2) Periodic statements. A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section. . . .". 12 C.F.R. 1026.41 provides for a very detailed periodic statement, almost all of which is inapplicable when a debt is accelerated, as in foreclosure, when only two sums are relevant - the amount to reinstate the mortgage loan and the entire sum due. 12 C.F.R. 1026.41 does not contemplate collection practices relating to an accelerated debt in foreclosure, instead, its closest approach is found in subsection 1026.41(8) which states that if the consumer is more than 45 days delinquent the notice must state:

(i) The date on which the consumer became delinquent;
(ii) A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;
(iii) An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;
(iv) A notice indicating any loss mitigation program to which the consumer has agreed, if applicable;
(v) A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;
(vi) The total payment amount needed to bring the account current; and
(vii) A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

47. The CFPB's caveat that the FDCPA does not generally make loan servicers liable for communications to borrowers after notice to cease contact is exemplified by the CFPB's warning in its advisory opinion that "As provided in that section, no liability arises under the FDCPA for an act done or omitted in good faith in conformity with an advisory opinion of the CFPB while that advisory opinion is in effect."

48. A periodic statement that overreaches and presents misleading information to

the borrower is not in good faith and should not be accorded any protection from liability.

49. The Court applies the "least sophisticated consumer" test in determining whether § 1692e applies to a "false, deceptive or misleading" communication in violation of the FDCPA. *Graziano v. Harrison*, 950 F.2d 107, 111 (3rd Cir. 1991).

50. Not only did the periodic statements mislead the borrower by requiring payment on late charges after acceleration, they all stated a "Total Amount Due" but also stated "This amount is not a payoff quote".

51. If it wasn't a payoff quote, then it certainly wasn't the total amount due - and therefore, it misrepresented the nature of the "Total Amount Due". Further, the September 5, 2013 periodic statement says "This is not a reinstatement quote". (Exhibit N to Amended Complaint).

52. Clearly, the "Total Amount Due" includes the accelerated sum on all principal payments, it was never decelerated, even though the foreclosure was dismissed. But, because it's not a payoff quote and because the Total Amount Due doesn't mean "Total Amount Due", the borrower has no idea what the label "Total Amount Due" means or what the sum represented thereby stands for.

53. Perhaps SPS may clarify this in a periodic statement section labeled the "Once and for all, final Total Amount Due - nothing more to be added" figure.

54. The CFPB did not mean to allow periodic statements to be sent to borrowers which are deceptive and misleading to the least sophisticated consumer.

## **CONCLUSION**

55. The Amended Complaint in this matter has established Defendant, BONY as

"debt collector" pursuant to the FDCPA and COUNTS I, II and III address the Amended Complaint filed in the State court action as the violation placing this suit well within the time frame under the statute of limitations of one year in which to present said suit.

56.   Plaintiff(s) hereby withdraw COUNTS IV and XII pertaining to the FCCPA.

57.   In COUNTS IX and X, Plaintiff(s) have plead sufficient elements of RICO in their Amended Complaint by and between the relationship and actions taken by both Defendant(s) BONY and MERS.

58.   The TILA claim in COUNT XI should equitably tolled as a result of the concealment by BONY of the assignment (or) is timely by BONY's action in filing an Amended Complaint in the foreclosure matter.

59.   The CFPB did not carve out an exception to FDCPA that would reward a a communication by avoidance of liability under consumer protection that also confuses the unsophisticated consumer.

60.   Additionally Plaintiff(s) have met the burden that Defendant, SPS was placed on notice i.e. known or should have known that Plaintiffs were represented by counsel as contemplated by both the FDCPA and FCCPA.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished via the following manner, this **15th day of December, 2014**, to the following:

R. Carter Burgess, Esq.
10407 Centurion Parkway N., Suite 200
Jacksonville, FL 32256
cburgess@mcglinchey.com
mmoreau@mcglinchey.com

Attorney for Defendant(s), THE BANK OF NEW YORK MELLON f/k/a The Bank of New York, as Successor-in-Interest to JPMorgan Chase Bank, N.A. as Trustee for Bear Stearns Asset Backed Securities, Bear Stearns Alta-A Trust, Mortgage Pass Through Certificates Series 2006-2; SELECT PORTFOLIO SERVICING, INC.; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

   /s/ Jorge L. Montero_____
Jorge L. Montero, Esq.
"Plaintiff's Lead Counsel"
Florida Bar Number: 0608491
MONTERO JUSTICE, P.A.
P.O. BOX 582004
Kissimmee, FL 34758
Phone: (407) 966-3092
Fax:     (407) 386-8180
E-Mail Address: monterodocuments@gmail.com

/s/ George Gingo
George Gingo, FBN 879533
James E. Orth, Jr. FBN 75941
Gingo & Orth, P.A.
400 Orange Street
Titusville, FL 32796
(321) 264-9624
(866) 311-9573 (Fax)
gingo.george@gmail.com
jamesorthlaw@gmail.com